Order Entered.

_____
L. Edward Friend, II
United States Bankruptcy Judge
Dated: Tuesday, July 19, 2005 9:35:49 AM

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE | § | |
| | § | |
| NICHOLAS MICHAEL FONTE | § | BK NO. 04-00954 |
| | § | |
| Debtor. | § | |
| | § | |
| NICHOLAS MICHAEL FONTE, | § | |
| | § | |
| Plaintiff. | § | |
| v. | § | AP NO. 04-0083 |
| | § | |
| SALLIE MAE SERVICING, AND | § | |
| EDUCATIONAL CREDIT MANAGEMENT | § | |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### Facts

Debtor filed the instant adversary proceeding in order to discharge approximately $95,000 in Federal Parent PLUS Student loans under the undue hardship provisions of 11 U.S.C. § 523(a)(8). Debtor lives alone in Aurora, Illinois and is a 56 year old divorced man with three children. He has a bachelor of science and a master of science degree and was employed for 27 years by Alcan Aluminum, where he earned approximately $100,000 per year, including bonuses, in the last years of his employment. Since his layoff from Alcan, Debtor experienced a two-year period of unemployment during which time he sustained himself and his family obligations on his severance pay for most of the

first year, and by drawing from his Alcan retirement plan, which he still does. During that period of unemployment, debtor actively sought employment, but eventually filed for Chapter 7 bankruptcy relief.

According to testimony, Debtor incurred approximately $80,000 of this Parent PLUS obligation covering the educational expenses of his son, as is required under the terms of his divorce settlement order. His son, a graduate of the University of Southern California with a degree in Cinema, is bipolar/depressive and currently unable to work. The other $15,000 was borrowed on behalf of his second child.

Since the filing of his bankruptcy in March 2004 and this adversary action in June 2004, Debtor has become employed as an Environmental Health and Safety Coordinator at a foam production facility in Illinois. He now earns $69,000 per year, plus irregular bonuses averaging roughly $100 per month. After much figuring by the parties at trial, the Court concludes that he nets approximately $5,600 per month, $4,200 from his employment and $1,400 from his Alcan retirement account.

Debtor's only significant debt is the subject student loan obligation. His monthly expenses include $885 rent for a one bedroom apartment, approximately $140 for basic utilities, $95 for cable television, $245 for telephone service, $400 for food, $125 for clothing, $50 for dry cleaning, $200 for gasoline and car repairs, $218.79 for car insurance, $150 for medical, $50 for church donations, $100 for recreation, and $281.66 in alimony or support payments. Most significantly, and pursuant to his divorce settlement order, Debtor pays for 67% of his youngest daughter's $14,000 college tuition and expenses, roughly $9,380 during the last academic year with two undergraduate years remaining. He has not borrowed to meet this educational obligation.

Debtor owns his 2002 Toyota Camry outright, has no substantial cash accounts, and owns no

2

real estate. He has no credit card debt or installment debts. He takes no elaborate vacations and does not own a motorcycle, recreational vehicle, or boat.

Debtor had been current on the Parent PLUS payments throughout the time he was married until six to seven months after his divorce. He testified that he stopped payment on the advice of an Indiana lawyer upon contemplation of filing for bankruptcy. When asked if he could currently make the payments, he indicated that he "probably could make close to the payment that [he had] before." He seeks discharge of the obligation in order to protect his future retirement. With a discharge he will be able to discontinue drawing on his Alcan account and roll what remains of that account into his current employer's 401(k) plan so that he may "retire at a respectable age."

## Discussion

Section 523(a)(8) of the Bankruptcy Code permits an exception to the nondischargeability of student loans. The exception exists when repayment of the student loan would impose an undue hardship on the debtor.

> A discharge . . . does not discharge an individual from any debt–
> * * *
> (8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, *unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.*

11 U.S.C. § 523(a)(8) (emphasis added).

The Bankruptcy Code supplies no specific guidance as to the determination of undue hardship.

3

Rather, bankruptcy judges are to "exercise discretion in determining whether payment of the debt will cause undue hardship on the debtor and his dependents, thus defeating the 'fresh start' concept of the bankruptcy laws." 4 *Collier on Bankruptcy* & 523.14[2] (15th ed. Revised 2002). Courts have developed a number of tests to determine if a debtors student loans should be discharged under § 523(a)(8). See e.g., Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702 (8th Cir. 1981); Bryant v. Pennsylvania Higher Educ. Assistance Agency (In re Bryant), 72 B.R. 913 (Bankr. E.D. Pa. 1987). A majority of courts, however, have adopted the three-part test set forth by the court in Brunner v. New York State Higher Educ. Services Corp. (In re Brunner), 831 F.2d 395 (2nd Cir. 1987). In Brunner, the Second Circuit Court of Appeals adopted a test which required,

> a three-part showing: (1) that the debtor cannot, based on current income and expenses, maintain a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

Id. at 396.

In Ekanasi v. Educ. Resource Inst. (In re Ekanasi), 325 F.3d 541 (4th Cir. 2003), the Fourth Circuit reviewed a bankruptcy court's application of the Brunner factors, thereby giving its first published stamp-of-approval to the Brunner undue hardship analysis. Accordingly, in the instant case, this Court will utilize the three Brunner factors to determine whether repayment of the student loans will subject the debtor to undue hardship.

First Prong B Inability to Maintain a Minimal Standard of Living

There is no set standard of whether a lifestyle constitutes a "minimal"standard of living. Rather, the determination of whether a debtor is unable to maintain a minimal standard of living if forced to repay his or her educational debt involves each court applying "its own intuitive sense of what is a 'minimal= standard of living." Cooper v. Educ. Credit (In re Cooper), 277 B.R. 853, 857 (Bankr. M.D. Ga. 2002). This determination, required of bankruptcy courts by the Bankruptcy Code, has been described as a decision of "how much personal sacrifice society expects from individuals who accepted the benefits of guaranteed student loans but who have not obtained the financial rewards they had expected to receive as a result of their educational expenditures." Id. (citing 4 *Collier of Bankruptcy*, **&** 523.14[2] (15th ed. Rev. 2001)).

"Minimal," under the Brunner standard is a "flexible and subjective term that can only have objective meaning in light of the particular facts of each case." Afflitto v. United States of America (In re Afflitto), 273 B.R. 162, 170 (Bankr. W.D. Tenn. 2001). The Bankruptcy Code does not "require debtors to live 'at or below poverty level to be entitled to a fresh start.'" Id. (quoting Frattini, *The Dischargeability of Student Loans: An Undue Burden?* 17 Bankr. Dev. J. 537, 573 (2001)). This Court endeavors to examine "'the overall living situation of the debtor,' in an effort to 'ensure the debtor is not living an extravagant life, incurring unnecessary and frivolous expenses, and sitting on comfortable income or assets.'" Id.

As itemized on his Worksheet for Student Loan Hardship Discharge, most of Debtor's monthly expenses appear reasonable. A few, however, raise doubt that he has fully minimized his monthly outlays. For example, his $95 per month cable television expense indicates that he has expanded or premium service that the Court finds unnecessary for one seeking an undue hardship determination.

5

Other examples which would militate against a finding that he is unable to maintain a minimal standard of living if forced to repay his Parent PLUS obligation include his monthly telephone expense of $245 and monthly food expenses of $400.  That being said, no single factor points against such a finding more than Debtor's own testimony that, as conditions stand now, he "probably could make close to the payment that [he had] before" by continuing to draw on his Alcan retirement.  While Debtor would undeniably prefer to preserve his Alcan retirement for his later years, it remains a legitimate asset upon which he is able to draw in order to maintain his current standard of living while continuing to make his loan payments.

Second Prong B Persistence of Condition

Having concluded that Debtor is able to maintain a minimal standard of living while making his Parent PLUS payment, it is unnecessary to determine whether "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period." Brunner, 831 F.2d at 396.  However, it is worth commenting that Debtor's youngest daughter, for whom he pays two-thirds of her college tuition and expenses, has only two years of undergraduate school remaining.  While he *might* pay for her graduate school beyond that two year point, it is too tenuous a proposition for the Court to find, at this time, that his payments on her behalf constitute an additional factor that indicate his current state of affairs is likely to persist.

Third Prong - Good Faith Efforts to Repay

The third prong of Brunner requires Debtor to have made good faith efforts to repay his student loans.  While most courts look exclusively at a debtor's repayment history for prong three, others have measured good faith in debtors' efforts to obtain employment, maximize income, minimize expenses,

6

participate in alternative repayment options, and whether the discharge itself is sought in good faith, as opposed to a debtor intentionally creating the hardship.  See Goulet v. Educ. Credit Mgmt. Corp., 284 F.3d 773 (7th Cir. 2002); Educ. Credit Mgmt. Corp. v. Polleys, 356 F.3d 1302 (10th Cir. 2004); O'Hearn v. Educ. Credit Mgmt. Corp., 339 F.3d 559 (7th Cir. 2003).

While unnecessary to evaluate having already found against Debtor on prong one of the analysis, Debtor has clearly made good faith efforts to repay the loans in the past.

## Conclusion

Forcing Debtor to repay his Parent PLUS loans would not mean that he is unable to maintain a minimal standard of living under the Brunner test.  Therefore the Court cannot find that nondischargeability will impose an undue hardship under § 523(a)(8) of the Bankruptcy Code. Therefore, Debtor's Parent PLUS loans are hereby **NONDISCHARGEABLE**, and it is **SO ORDERED**.

The Clerk is directed to transmit copies of this order to the parties in interest.